| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

ROBERT L. WOODS, §
　§
　　　　Plaintiff, §
versus § CIVIL ACTION H-04-2822
　§
　§
SHELDON INDEPENDENT SCHOOL DISTRICT, §
　§
　　　　Defendant. §

# Amended Opinion on Summary Judgment

*1.   Introduction.*

A 69-year-old black man retired. He claims that he was constructively discharged because of his age and race. His employer has moved for summary judgment and will prevail.

*2.   Background.*

In July 2000, Sheldon Independent School District hired Robert Woods as a special education teacher. He supervised the Positive Approach to Student Success program at C.E. King High School. The program is for students whose behavioral problems affect their ability to succeed in school. As the program's supervisor, Woods taught only one subject – a social skills class. During the rest of the day, he observed and interacted with his students in their regular classes.

At the beginning of the 2003-04 school year, Frances Baccigalopi – King's principal – assigned Donna Ullrich – an assistant principal – to oversee special education at the high school. Ullrich found that Woods was not managing the program properly. She said he (a) was not teaching during his skills class; (b) had not developed a curriculum for the class, (c) was not producing lesson plans as required, and (d) had not followed state and federal special education regulations for each student. In November

2003, Ullrich met with Woods and discussed these problems with him. She also gave him fourteen specific directives for fixing them. These included instructions to (1) comply with the regulations by evaluating his students' behavioral problems and developing plans to address them; (2) implement an incentive program to encourage good behavior; (3) contact parents on a weekly basis; and (4) assess his students' progress three times every year. To help Woods, Sheldon sent him to another school district to observe a program similar to his own. Around the same time as this visit, Woods requested a full-time aide; Sheldon granted the request.

Despite the extra help, Sheldon says that Woods ignored many of Ullrich's instructions. He did not evaluate and develop plans for every student, implement an incentive program, or regularly assess his students' progress. When Ullrich started an incentive program for him, Sheldon says that Woods failed to apply it consistently.

Sheldon also says that several parents complained about Woods. In September 2003, one parent said that he called her a "whiny, babying mother" and discussed with her the behavioral problems of another student – a breach of confidentiality. In January 2004, another parent said that Woods had admonished another teacher's class that Martin Luther King, Jr., had not marched for students to act foolishly. He also told the class that the problem with students is that they do not fear their mothers and that his mother had said that she would rather kill him than have a white man do it. Baccigalopi says that she spoke with Woods on several occasions about these "lapses in professional judgment."

Sometime during the 2003-04 school year, Baccigalopi assigned Margaret Brewer to chair the special education department. Baccigalopi says that she chose her because she had been exposed to a variety of special education settings while she was shadowing the former chair before her retirement. Woods says that Brewer was uncertified in special education, but her Texas Educator Certificate shows that she was certified in Texas to teach special education as of August 8, 2003. Woods also says that Baccigalopi did not consider him for the job, despite his 22 years of teaching experience. Baccigalopi says that Woods never expressed to her an interest in the position. Even if he had, she says that his narrow experience and unsatisfactory performance at King did not qualify him for the position.

In May 2004, Ullrich conducted Woods's annual evaluation. She rated his

performance as below expectations in seven of forty-seven categories. These included (1) time management; (2) student-centered instruction; (3) critical thinking and problem solving; and (4) professional communication – both written and oral – with students, parents, and faculty. In every other category, she rated his performance as proficient. In no category did he exceed expectations or perform unsatisfactorily.

Woods claims that, throughout the 2003-04 school year, Baccigalopi continually harassed him. On at least 7 different occasions, he says that she told him that he was too old to teach and should retire. He also says that whenever he and Baccigalopi passed in the hall, her response to his greeting was always "you still here?" Baccigalopi denies that she ever told him that he was too old to teach.

Most of Sheldon's professional workers have a two year employment contract. District rules require principals to review each contract every February and recommend whether the Board of Trustees should extend it or take no action. If the Board extends a contract, the worker begins the next school year again with a two-year contract. If the Board takes no action, the worker begins the next school year with one year left on his existing contract, unless the Board has effectively fired the employee by allowing his two-year contract to expire and refusing to give him a new contract.

The rules also require principals to notify a worker of his recommendation before giving it to the Board. This gives a low-performing worker a choice: he may (a) prevent the principal from making his recommendation to the Board by submitting a letter of resignation or retirement; or (b) return the next school year and use the one year left on his contract to improve his performance. If he improves, Sheldon often gives him a new two-year contract.

Woods began the 2003-04 school year with a two-year contract. The Board had extended his contract twice before. In February 2004, Baccigalopi met with Woods. She explained that, because of parent complaints and his poor management of the program, she was going to recommend that the Board take no action on his contract. She says that she also reminded him that he still had one year left on his contract, and that he could either return the next school year and work on his performance or submit a letter of resignation or retirement. She says that she discussed the retirement option with Woods because he had mentioned several times that he might retire at the end of the school year

and already had discussed retirement options with her. Woods says that Baccigalopi never explained that he could return and work on his performance. Rather, he says she and told him that his only options were to retire or resign.

About a week after the meeting, Baccigalopi sent a note to Woods saying that he had to submit a letter of resignation or retirement by February 25, 2004, if he wanted to avoid termination. Woods says that he interpreted the meeting and note together as a choice between termination and resignation or retirement. Baccigalopi says that she never threatened to fire Woods if he refused to resign or retire, and that her reference to his termination in the note – instead of her no-action recommendation – was a mistake.

Woods did not submit a letter of resignation or retirement by February 25, 2004. Baccigalopi, therefore, submitted her recommendation to the Board on March 16, 2004. Two days later, Woods submitted a letter of retirement. He was 69 years old. He completed the school year and did not return to complete his contract. Sheldon hired Elijah Mallery, a 24-year-old black man, to replace Woods.

In May 2004, Woods filed a discrimination charge with the Equal Employment Opportunity Commission. He claimed that he was discriminated against because of his race and age when Baccigalopi told him to resign or retire to avoid termination. The Commission terminated its investigation and issued a right-to-sue letter on May 24, 2004. On August 19, 2005 – over a year after filing suit and in response to a court order – Woods finally furnished the letter here.

3. *Constructive Discharge*.

Woods argues that Sheldon, motivated by his age, compelled him to retire. He says that he retired only because he believed his termination was inevitable. *See Guthrie v. J.C. Penney Co.*, 803 F.2d 202, 207 (5th Cir. 1986). Such a belief, however, is not sufficient. He must also show that Sheldon made his working conditions so intolerable that a reasonable person would have felt compelled to quit. *Id.* He has not.

Woods contends that he reasonably believed he would be fired because of Baccigalopi's reference to his termination in her note. While Baccigalopi admits that this was a mistake, this is not something that would compel the reasonable person in his position to quit. Woods admits that at his February meeting with Baccigalopi, she told

him that she was going to recommend that the Board take no action on his contract. He also says she told him that, because of this recommendation, his only options were to retire or resign. This, coupled with the reference in her later note to his termination, he says, caused him to believe that she was going to fire him unless he quit. In this situation, a reasonable person, knowing that he had one year left on his contract, would have asked Baccigalopi to clarify the situation, not quit.

It was her job to evaluate and recommend; it cannot be forced resignation to advise a worker that he is in trouble. The courts are flooded with plaintiffs saying that because their employer did not progressively discipline, the firing is illegal.

Woods argues that the cumulative effect of Sheldon's actions supports his claim of constructive discharge. *See Chavera v. Victoria Independent School District*, 221 F. Supp. 2d 741, 749 (S.D. Tex. 2002). He says that more than one of several factors that courts have considered support his claim of constructive discharge. He lists these factors as: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to remedial or degrading work; (5) badgering, harassment, or humiliation to encourage resignation; (6) offers of early retirement. *See id.* He fails to point out, however, which ones apply to him, and the court will not analyze the record for him.

4. *Age.*

Woods contends that, because his replacement was 24 years old, the presumption of age discrimination is irrebuttable. This is not so. When Sheldon hired Woods, he was 64 years old. Although he was replaced by a considerably younger man, if Sheldon did not want older teachers, they would not have hired him in the first place.

Moreover, Baccigalopi was the principal at King the entire time Woods taught there. He taught his first year on a one-year probationary contract. After that, he received a standard two-year contract that Sheldon renewed twice. If Baccigalopi was biased against Woods because of his age, she would not have recommended that the Board give him a two-year contract and later renew it twice.

Sheldon has also presented evidence of Woods's deficient performance during the 2003-4 school year. Several parents complained about Woods's inappropriate conduct, he failed to follow Ullrich's instructions for proper management of the program, and

Ullrich rated his performance in seven of forty-seven categories as below expectations in his annual evaluation.

5.  *Race.*

Woods contends that Sheldon mistreated him because of his race. He presents no evidence, however, to support this claim.

6.  *Conclusion.*

Woods quit. Sheldon did not constructively discharge him. Sheldon's motion for summary judgment will be granted.

Signed August 30, 2005, at Houston, Texas.

　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　Lynn N. Hughes   USDJ
　　　　　　　　United States District Judge

- 6 -